## QUIMBY *v.* MELVIN.

In a suit on a bond conditioned that the defendant would in good faith abide by and fulfill his agreement in having and perfecting a reference, it was *held*, that evidence showing an interference by the defendant to prevent one of the referees from taking part in an award as to the costs, which were part of the subject referred, was admissible to show a breach of the bond, though the costs only remained undecided.

IN debt on bond there were two pleas. The bond and condition were united upon oyer, and an agreement to extend the

time of making the award. The condition recited that the parties were tenants in common of a meadow, and being unable to agree on a division, had referred the partition to N. Stickney, B. Loveren, and C. Woods, &c., and provided that if said A. Melvin " on his part shall in good faith abide by and fulfill his said agreement in having and perfecting said reference, and shall abide by and confirm the division which shall be made," &c., and " shall pay all such costs attending upon and incident to said reference, as 'said referees shall award," &c., then, &c. The time of making the award was extended to October 1, 1849.

The first plea then alleges that he did in good faith abide by and fulfill his said agreement in having and perfecting said reference, &c., and did in no way revoke said submission, but the arbitrators did not within, &c., make any award, &c.

The second plea alleges that he did in good faith abide by and fulfill his said agreement in having and perfecting said reference, &c., and did in no way revoke the said submission, &c. ; that on, &c., said Stickney and Loveren, acting without the aid or participation of said Woods, made an award, which is set out, and after reciting that they had previously made an award as to the land, awarded costs to Quimby, and that no other award was made.

To each of these pleas the plaintiff filed three replications.

The first to each denied that the defendant did abide by and fulfill, &c., but wrongfully neglected, &c.

The second to each alleges that the defendant on, &c., at, &c., wrongfully hindered said referees from making any award, &c.

The third to each alleges that the defendant on, &c., at, &c., did wrongfully procure C. Woods to refrain from and refuse to participate in making any award of and concerning the costs of reference, &c.

Issue was joined upon these replications.

On the trial it appeared that there was a hearing before the referees on the 7th of September, 1849, on the premises, at which both parties attended with counsel and witnesses. It was then agreed by the parties that the land should be divided by a line

drawn east and west parallel to and eighteen rods from the south line of said lot, and Melvin should have the south and Quimby the north part; and that Melvin should have certain rights of way across Quimby's part; but the testimony was conflicting as to what rights of passage Melvin should have, and as to the adjustment of the costs. Melvin contended that it was at first agreed that he should have the right to pass and repass across Quimby's part at any time and at any and all places as should be most convenient for him, and that the fees of the referees should be paid half by each, and each to pay his own costs.

While Quimby contended that the referees went on and decided what right of passage Melvin should have, limiting him to a single pass-way, and surveyed and located the same, but the question of costs remained undecided.

Before the arrangements were concluded, Woods left, the referees having adjourned to the next day to finish the business.

After Woods left, deeds were made out for the parties to sign, and Quimby executed his deed to Melvin, but there was a discussion as to the right of way, and Melvin declined to sign his deed. Melvin contended that it was agreed that Mr. Steele, his counsel, should insert the provision as to the right of way, as he understood it to be agreed, and the deed should then be executed and accepted. That Steele did so and Melvin executed it, but Quimby refused to accept it. All this Quimby denied.

Melvin contended that it was agreed that there was to be no further action of the referees, while Quimby contended that it was expressly agreed that the referees should meet on the first of October, for the purpose of deciding on the costs, and that Melvin agreed to notify Woods of the time.

Quimby introduced evidence tending to prove that Melvin interfered to prevent Woods from attending on the first of October, and that he did not attend himself, and that the other referees sent for Woods on the first of October, but he declined to attend.

At the close of the plaintiff's evidence the defendant moved for a nonsuit, and the court overruled the motion, and the

Quimby *v.* Melvin.

defendant excepted, but proceeded with the trial and put in his evidence, and the plaintiff then put in other testimony.

A witness testified that Melvin told him he wrote a letter to Woods on the 27th of September, and was asked to state what he said it contained; but the enquiry was objected to, because no enquiry was shown as to the letter, and it was held inadmissible, and the defendant excepted.

The defendant requested the court to instruct the jury as follows:

1. That the defendant's omission to take any measures to have a hearing, is no breach of the bond.

2. That if Woods had attended and signed the award that was made, it would not have been binding.

3. That the notice to Woods on the day of the hearing was not sufficient.

4. That there is no evidence of any breach of the condition of the bond.

5. That an award, to be binding, must embrace both the partition of the land and the costs; and to hinder the making an award as to costs alone, if there had been such hindering, unless there was a purpose to include the partition in the award, would be no breach of the bond.

6. To make such hindering a breach of the bond, the award as to costs must have been part of an award including both partition and costs; or, in other words, if the object of the hearing was only to award as to costs, then even to hinder such hearing would not be wrongful, unless the parties had agreed that no award should be made as to partition.

7. That the deed of Melvin, as amended by Mr. Steele, reserved only a single pass way to the grantor.

All which the court declined to do, but did instruct the jury that as the bond provided that in the absence of either party the referees might proceed *ex parte*, the fact that Melvin did not attend at their hearing, even though he was at home, and not otherwise engaged, would not of itself constitute any breach of the bond.

VOL. XXXV.                    14

That if they should find, upon all the evidence before them, that the parties did agree upon the partition and rights of passage, as claimed by the defendant, by agreeing that Steele should make the deed as he understood the contract, and that they, the parties, would consent thereto and abide thereby, and did agree upon the adjustment of the costs, and the whole matter was thus taken from the hands of the referees by the understanding and agreement of the parties, that they should return their verdict for the defendant.

But if they should find the facts to be otherwise, and that the matters in controversy were not thus settled by the parties, they would then proceed and inquire whether the defendant did in good faith abide by and fulfil his said agreement, in having and perfecting said reference in the manner in said writing obligatory provided; or whether he had failed to do so in either of the ways specified by the plaintiff in his replications, and return their verdict accordingly.

The jury found for the plaintiff upon all the issues joined, and the defendant moves that the verdict may be set aside and a new trial granted, upon the grounds appearing in the preceding case.

*H. A. Bellows,* for the defendant.

*Flint & Bryant,* for the plaintiff.

BELL, J. The real question between these parties arises upon the issues joined upon the first replication to each of the defendant's two pleas, that the defendant did not in good faith abide by and fulfil his agreement, in having and perfecting said reference in the manner provided in the writing obligatory, upon which the action was founded.

The issue upon the second replication to both pleas presents substantially the same question, that the defendant did in good faith abide, &c., in this, that he wrongfully hindered and prevented said referees from making an award respecting the costs; and upon the third, that he hindered such award respecting costs

Quimby *v.* Melvin.

by causing Woods, one of the referees, to refrain from taking any part as to costs.

The only difference between these issues is, that the second and third issues are more specific in stating in what mode the defendant did not abide, &c.

It has heretofore been decided that to render an award valid it must be an adjudication of all the matters submitted, and that to hinder an award in any essential part is of course to defeat any valid award; and that the condition of this bond evidently contemplates that the referees should award as to the costs. The allegation that the defendant hindered an award as to costs, was a sufficient breach.

The instructions desired of the court are to be tested with reference to their issues, and it seems that the two first were immaterial. An omission to take measures to have a hearing was not a point made in the case, except as to his own neglect to attend, and as to that proper instructions were given. Positive acts to prevent the attendance of Woods were attempted to be shown, and it must have been upon them the case turned.

It was immaterial whether the award, if signed by Woods, would be valid or not. If the defendant had done nothing to prevent an award by all the referees, and the imperfect award now produced had been signed by them all, its validity and effect would have been open questions. But an award by two was a nullity, and its effect, supposing it had been signed by Woods, was a mere speculation.

The court are not required to instruct the jury upon matters which are not material to the case.

The sufficiency of the notice to Woods was not material, if the defendant interfered to prevent his being present. It might be material as raising a doubt whether the shortness of the notice might not have prevented his attendance, rather than the defendant's interference. In that view it was not a matter of law, but a question for the jury, who must be understood to have considered it.

As to the instruction asked, that there is no evidence of any

breach of the condition of the bond, it raises no question as to the amount or sufficiency of the evidence, but whether there is any evidence. And we think there were circumstances tending to show that the defendant did take measures to prevent the attendance of Woods, which the jury might properly consider. To prevent his attendance was in effect to defeat a valid award. If it was done with the design to defeat any award, it must be idle to contend that the defendant, *in good faith*, did abide by and fulfil his agreement in having and perfecting said reference.

The great question of the case is probably disclosed in the 4th and 5th instruction sought; that to hinder an award as to costs alone, unless it was intended to make an award as to both costs and partition, would be no breach; that an award as to costs alone, unless the parties had agreed there should be no award as to partition, would be invalid, and to hinder it no wrong.

It is to be observed that there is no averment as to the object, or purpose, or arrangement of the parties, or of the referees, in regard to the partition; and the court are not at liberty to assume, in the absence of any averment on the subject, that the parties had made a partition themselves, or had agreed to withdraw the subject from before the referees, or that either the parties or the referees had concluded or intended not to make a complete and perfect award upon the matters submitted.

Upon the face of the pleadings, the defendant set out a defective award by two of the referees, as to costs; but it raises no presumption that the matter of the partition was withdrawn from their cognizance or set aside by them, since they expressly recite that having heretofore made an award by the agreement of the parties as to the division of the land, they now make an award as to costs. Neither can it be justly inferred that because the two made an award as to costs alone, the three, if all present, would have done so.

Neither would the court, upon the facts now presented in the case, be warranted in inferring that the parties had withdrawn the subject of the division from the consideration of the referees, or that the referees had refused to act upon it. It is suggested

that the parties agreed upon a division themselves, and thus superseded any action upon that matter. Suppose they had agreed upon a division, would this have of itself the effect of withdrawing the matter from before the referees? If they had compromised the whole controversy it would seem to have that effect, but that was not this case. Here, two matters at least were referred: the division of the meadow and the costs; because, upon any reasonable construction of the bond, the costs were as distinctly referred as the partition. It is not suggested, in this view of the case, that both were settled, though that was contended on the trial. The assumption is that they agreed on a division of the land. Now, where several matters are referred, and the parties admit certain claims, or agree how they are to be disposed of, it by no means follows that those agreements or admissions withdraw those matters from before the arbitrators. Such admissions are made in almost every hearing. On the contrary, unless they are agreed to be withdrawn they remain before the arbitrators, and it is their duty, and it is the usual practice, to include them in the award as much as if they had been litigated to the last moment.

There is nothing in the facts, in this view of them, which would afford the least justification for an inference that it would not have been the duty of the arbitrators to have made an award embracing the partition and the costs.

But if we suppose the parties to have agreed on a division of the land, and thus or in consequence to have withdrawn that portion of the subject matter referred, from before the referees, the subject of the costs was the only matter remaining before the referees for their decision. And unless it should be regarded as so strictly a mere incident of the partition as necessarily to fall with it, it must remain before them to be decided, and therefore the whole subject upon which they had authority to act; and to hinder an award upon that subject would be a breach of the bond. Upon this supposition, which we do not regard as sustained by the case, the question would arise whether the costs were so far a mere incident that no award could be made upon them. Gen-

erally, it is true, that costs are a mere incident of a law suit, and if the principal matter is withdrawn from the consideration of the court, the question as to costs falls ; but where parties have by their submission made the costs a distinct matter of reference, it may well be contended they remain a distinct subject of discussion, though the other matters in dispute should cease.

But these views upon the facts are quite too favorable to the defendant. The evidence fails to show that any effectual agreement was made by the parties relative to division. It tends to show that the parties had no difficulty in dividing the meadow into two parts, but this was not all that was required to make a partition. It was necessary the southerly piece should have attached to it a right of way across the other, and the evidence tends to show that the arbitrators, starting upon the basis of the division assented to by the parties, marked out and defined, by course and distance, a way for the defendant across the part the plaintiff was to have, with which the defendant was not satisfied ; that the parties negotiated as to such a way, but they did not then agree, and it was in dispute whether they have ever agreed on any right of way. It would seem, from the last instruction asked, as well as from the evidence generally, that there was no such agreement. Such an agreement was indispensable to a division by the parties, unless they agreed to rest upon their implied rights of way, of which there is no pretence.

If then the arbitrators had attended at the day appointed, and Woods had been present, the position of the case would have been, that they would have found nothing had been accomplished, nor partition had been made by the parties, and there was no settlement of the costs, and the whole subject was still before them for decision, as at first. Their duty then would have been to make an award defining the share of each owner, and the rights of way of the defendant over the northern part, and to settle the costs. It cannot be presumed they would not have done it.

If, then, the jury believed the defendant interfered to keep Woods away, so that the costs should not be determined, as he thereby defeated the whole award, they have properly found their verdict against him.

The motion for a nonsuit was waived by the defendant, when he proceeded with his side of the case, by putting in his evidence. *Oakes* v. *Thornton*, 8 Foster 44.

The ruling of the court rejecting evidence of the contents of a letter, till some account was given why it was not produced, was in conformity to the decisions. *Nealley* v. *Greenough*, 5 Foster 329.

It is immaterial what the construction of the deed modified by Mr. Steele was. The whole was mere talk, there being no writings passed. Nothing was effected. Nobody was bound, if the deeds were not delivered and accepted; that is, exchanged by the parties. The parties stood as if no such deeds had been written.

The objection suggested, founded on the extension of the time of making the award, is overruled by the case of *Brown* v. *Copp*, 5 N. H. 346.

The charge of the court seems correct. It presented the true question for the consideration of the jury in a plain and direct form, and nothing more.

*Judgment on the verdict.*